UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ENRIQUE TALAMANTES, | § § | No. 1:18-cv-904-DAE |
| Plaintiff, | § § | |
| vs. | § § | |
| THE METROPOLITAN LIFE INSURANCE COMPANY, | § § § § | |
| Defendant. | § | |

### ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Enrique Talamantes's ("Talamantes" or "Plaintiff") and The Metropolitan Life Insurance Company's ("MetLife" or "Defendant") cross motions for summary judgment on the issue of whether MetLife's Certificate of Insurance provides coverage of Plaintiff's Long-Term Disability claim. (Dkt. # 55.) On December 20, 2019, this Court held a status conference on the Motions at which both parties discussed their position and clarified that their briefings were to be considered cross motions for summary judgment. Pursuant to Local Rule CV-7(h), the Court finds this matter suitable for disposition without a further hearing. After reviewing the Motions and supporting and opposing memoranda, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's motion for summary judgment.

1

BACKGROUND

Talamantes and MetLife stipulate to the following undisputed facts: The Becton, Dickinson and Company Group Life and Health Plan ("the Plan") is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"). (Dkt. # 1.) The Plan provides long-term disability ("LTD") coverage to eligible employees of Becton, Dickinson and Company. (Id.) At all relevant times, Plaintiff was an employee of Becton, Dickinson and Company and/or its subsidiary CareFusion Corporation (collectively "BD"), and he was a participant in the Plan. (Id.) MetLife issued Group Policy number 105523-2-G to BD that, effective January 1, 2017, funded the LTD benefits payable under the Plan. (Id.) For the year 2016, Standard Insurance Company ("Standard") provided the group policy that funded the LTD benefits payable under the Plan. (Id.) This insurance to fund the Plan benefits was provided under a Standard group policy identified as Group Policy number 649321-C issued to CareFusion Corporation. (Id.) By this lawsuit, Plaintiff seeks to recover LTD benefits under the Plan, to enforce his rights under the terms of the Plan, and to clarify his rights to future benefits under the terms of the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B). (Id. at 2.)

Plaintiff stopped working at BD on November 8, 2016 and on November 11, 2016 had left microvascular decompression surgery to relieve his

facial pain due to trigeminal neuralgia. (Id.) Plaintiff's date of disability was November 9, 2016. (Id.) Plaintiff returned to fulltime, active work at BD on December 23, 2016. (Id.) Plaintiff was approved for and paid short-term disability ("STD") benefits from November 18, 2016 through December 22, 2016 (34 days) under the BD Short Term Disability Plan funded by Standard. (Id.) Sedgwick Claims Management Services ("Sedgwick") is the claim administrator of the BD Short Term Disability Plan. (Id.) Plaintiff stopped working at BD on January 12, 2017, claiming that he had recurring pain in his face due to the trigeminal neuralgia and was unable to perform his job duties. (Id.) Plaintiff applied to continue his STD benefits. (Id.) Plaintiff had only a temporary recovery from his disability that began on November 18, 2016. (Id.)

In a November 13, 2017 letter, Sedgwick stated that Plaintiff's STD benefits "have been reinstated and he has been approved to receive disability benefits from January 12, 2017 through June 7, 2017 [146 days], the maximum benefit date for short-term disability." (Id.) Upon the exhaustion of STD benefits, Sedgwick forwarded Plaintiff's claim for LTD benefits to Standard, which provided the policy that funded the LTD benefits under the Plan for disabilities which began on, or before, December 31, 2016. (Id.) Standard denied Plaintiff's claim for the stated reason that his claim was not covered under the Standard group policy. (Id. at 3.) Standard's denial of Plaintiff's claim was not based on the

3

merits of Plaintiff's claim for LTD benefits. (Id.) Upon the exhaustion of STD benefits, Sedgwick did not forward Plaintiff's LTD claim to MetLife for determination. (Id.) MetLife has not conducted an administrative review of Plaintiff's LTD claim. (Id.) MetLife denies that Plaintiff's LTD claim is covered under the MetLife group policy. (Id.)

## LEGAL STANDARD

"Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Vann v. City of Southaven, 884 F.3d 307, 309 (5th Cir. 2018) (citations omitted); see also Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Bennett v. Hartford Ins. Co. of Midwest, 890 F.3d 597, 604 (5th Cir. 2018) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" Nola Spice Designs, LLC v. Haydel Enter., Inc., 783 F.3d 527, 536 (5th Cir. 2015) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"Where the non-movant bears the burden of proof at trial, 'the movant

may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating . . . that there is an issue of material fact warranting trial.'" Kim v. Hospira, Inc., 709 F. App'x 287, 288 (5th Cir. 2018) (quoting Nola Spice Designs, 783 F.3d at 536). While the movant must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. Austin v. Kroger Tex., L.P., 864 F.3d 326, 335 (5th Cir. 2017) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1076 n.16 (5th Cir. 1994)). A fact is material if it "might affect the outcome of the suit." Thomas v. Tregre, 913 F.3d 458, 462 (5th Cir. 2019) (citing Anderson, 477 U.S. at 248).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." Jones v. Anderson, 721 F. App'x 333, 335 (5th Cir. 2018) (quoting Duffie v. United States, 600 F.3d 362, 371 (5th Cir. 2010)). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. Infante v. Law Office of Joseph Onwuteaka, P.C., 735 F. App'x 839, 843 (5th Cir. 2018) (quoting Willis v. Cleco Corp., 749 F.3d 314, 317 (5th Cir. 2014)). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" McCarty v. Hillstone Rest. Grp., Inc., 864 F.3d 354, 357 (5th Cir. 2017) (quoting Boudreaux v.

5

Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005)).  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  Wease v. Ocwen Loan Servicing, LLC, 915 F.3d 987, 992 (5th Cir. 2019).

Additionally, at the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form.  See Fed. R. Civ. P. 56(c); Lee v. Offshore Logistical & Transp., LLC, 859 F.3d 353, 355 (5th Cir. 2017).  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  United States v. Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012) (quoting Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003)).

## DISCUSSION

As the parties have stipulated to the facts, the Court finds there is no genuine dispute of material fact and that summary judgment is appropriate.  The matter here turns on a legal interpretation of both Standard's and MetLife's certificates of insurance and of specific provisions within them.

Insurance coverage disputes are traditionally resolved using contract-interpretation standards, where courts must enforce unambiguous provisions as written.  See Merchants' Mut. Ins. Co. v. Lacroix, 35 Tex. 249, 256 (Tex. 1871); In re Deepwater Horizon, 470 S.W.3d 452, 464 (5th Cir. 2015).  A written provision is

ambiguous if it offers "two or more reasonable interpretations." Tesoro Ref. & Mktg. Co., LLC v. Nat'l Union Fire Ins. Co. of Pitts., 833 F.3d 470, 474 (5th Cir. 2016); see Kelley-Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 465 (Tex. 1988) (finding that conflicting interpretations by different parties does not constitute ambiguity). Hence, contracts must be read in their entirety "to harmonize and give effect to all provisions so that none will be meaningless." Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London, 327 S.W.3d 118, 126 (Tex. 2010) (affirming that courts determine meaning by reading the ambiguous language in light of the entire contract and the intent of the contracting parties).

The Court finds that a harmonious reading of Standard's and MetLife's insurance policies shows that MetLife owes no payable benefits to Plaintiff. As a starting point, the plain text of the following provisions indicates that Standard is the insurance carrier responsible for covering Plaintiff's claim for LTD benefits, assuming his claim has merit. The foundational provisions under Standard's plan are:

**[Standard's] INSURING CLAUSE**
If you become Disabled while insured under the Group Policy, we will pay LTD Benefits according to the terms of the Group Policy after we receive Proof of Loss.

**[Standard's] BENEFITS AFTER INSURANCE ENDS OR IS CHANGED**
During each period of continuous Disability, we will pay LTD Benefits according to the terms of the Group Policy in effect on the date you

become Disabled. Your right to receive LTD Benefits will not be affected by:
1. Any amendment to the Group Policy that is effective after you become Disabled.
2. Termination of the Group Policy after you become Disabled.

The plain text of these provisions suggests that Standard's responsibility is undercut only when benefits become payable to Plaintiff under another disability insurance plan. (Dkt. # 49, Exh. A.) Furthermore, it specifically states that Plaintiff's right to receive LTD benefits is not affected by termination of the Group Policy after Plaintiff becomes disabled. (Id.)

However, Plaintiff argues benefits did become payable under another plan and that, accordingly, MetLife is the responsible insurer for his LTD benefits. (Dkt. # 50.) Plaintiff returned to work before MetLife's Replacement Date and subsequently became insured by MetLife on January 1, 2017. (Dkt. # 49, Exh. B.) Plaintiff's disability relapsed on January 12, 2017, whereupon Plaintiff insists MetLife's coverage barred him from collecting Standard's benefits. (Dkt. # 50.) As a result, Plaintiff contends benefits became payable by MetLife when his disability relapsed. (Id.) Plaintiff points to two provisions in Standard's and MetLife's contracts in support: first is Standard's Temporary Recovery provision and

8

second is MetLife's <u>Rules for Temporary Recovery from a Disability under the Prior Plan</u> provision ("<u>Rules</u>").

**[Standard's] TEMPORARY RECOVERY**

You may temporarily recover from your Disability and then become Disabled again from the same cause or causes without having to serve a new Benefit Waiting Period. Temporary Recovery means you cease to be Disabled for no longer than the applicable Allowable Period.
- A. Allowable Periods
    1. During the Benefit Waiting Period: a total of 90 days of recovery.
    2. During the Maximum Benefit Period: 180 days for each period of recover.
- B. Effect of Temporary Recovery

If your Temporary Recovery does not exceed the Allowable Periods, the following will apply.
1. The Predisability Earnings used to determine your LTD Benefit will not change.
2. The period of Temporary Recovery will not count toward your Benefit Waiting Period, your Maximum Benefit Period of your Own Occupation Period.
3. No LTD Benefits will be payable for the period of Temporary Recovery.
4. *No LTD Benefits will be payable after benefits become payable to you under any other disability insurance plan under which you become insured during your period of Temporary Recovery.*

(Dkt. # 49, Exh. A.) (emphasis added).

Standard's <u>Temporary Recovery</u> provision means that a disability that relapses during Standard's 90-day Allowable Period of Temporary Recovery is considered uninterrupted. (Dkt. # 49, Exh. A.) However, Plaintiff urges his disability was not continuous from his onset of disability on November 9, 2016 to January 12, 2017, when he left work due to relapse. (Dkt. # 53 at 2.) Specifically, Plaintiff contends he ceased to be disabled during his period of

9

Temporary Recovery, when Plaintiff resumed full-time work from December 23, 2016 to January 11, 2017.  (Id.)  Plaintiff disputes that he cannot simultaneously "cease to be Disabled" under this provision, yet remain continuously disabled from his onset to relapse of disability.  (Id.)

Conversely, MetLife argues Plaintiff's disability was continuous. (Dkt. # 52 at 6-9.)  Both parties agree that Plaintiff's relapse on January 12, 2017 is the same condition that occurred on November 9, 2016 under Standard's coverage.  (Dkts. ## 49, 50, 52.)  Pursuant to Standard's <u>Temporary Recovery</u> provision, MetLife contends Plaintiff's period of disability from November 9, 2016 to January 12, 2017 was uninterrupted because Plaintiff's temporary recovery fell within Standard's 90-day Allowable Period.  (Dkt. # 52 at 6.) Given that Plaintiff's temporary recovery fell within the Allowable Period, MetLife argues Plaintiff's recurring disability was continuous and, as such, Standard remains responsible for Plaintiff's LTD benefits.  (Id.)

Plaintiff also points to MetLife's <u>Rules for Temporary Recovery</u> provision in support of his argument that his benefits became payable by MetLife when his disability relapsed.

**[MetLife's] Rules for Temporary Recovery from a Disability under the Prior Plan**
We will waive the Elimination Period that would otherwise apply to a Disability under this certificate if You:
- received benefits for a disability that began under the Prior Plan ("Prior Plan's disability")

10

- returned to work as an active Full-Time employee prior to the Replacement Date;
- become Disabled, as defined in this certificate, after the Replacement Date and within 90 days of Your return to work due to a sickness or accidental injury that is the same as or related to the Prior Plan's disability;
- *are no longer entitled to benefit payments for the Prior Plan's disability since You are no longer insured under such Plan; and*
- *would have been entitled to benefit payments with no further elimination period under the Prior Plan, had it remained in force.*

(Id. at Exh. B.) (emphasis added).

Under MetLife's Rules, MetLife will waive the Elimination Period for a disability claim if all five conditions are met. (Dkt. # 49, Exh. B.) Plaintiff asserts this indicates benefits would be payable from MetLife. (Dkt. # 50 at 5.) Neither party contests that Plaintiff satisfied the first three conditions. (Dkt. # 49, 50, 52.) Plaintiff argues he met all five conditions of MetLife's Rules, asserting that his employer's change of insurance should not infringe on his entitlement to LTD benefits. (Dkt. # 50 at 5-6.)

MetLife asserts that Plaintiff does not meet the final two conditions of its Rules because Plaintiff collected STD benefit payments from Standard following MetLife's assumption of coverage. (Dkt. # 52 at 9-10.) The fourth condition applies if, upon becoming insured under MetLife's certificate, the insured cannot still recover benefit payments from their past insurer. (Dkt. # 49, Exh. B.) In this case, MetLife explains Plaintiff's disability claim was funded by Standard for nearly six months following MetLife's assumption of Plaintiff's

11

disability coverage. (Dkt. # 49 at 2.) MetLife references a letter issued by Sedgwick on November 13, 2017 confirming Standard paid the rest of these STD benefits to Plaintiff from January 12, 2017 to June 7, 2017. (Dkts. ## 49, 52.) As such, MetLife argues Plaintiff does not meet the fourth condition.

Next, the fifth condition applies if, upon becoming insured by MetLife, the insured was entitled to LTD benefits with no further elimination period under their Prior Plan, regardless of whether the Plan was terminated. (Dkt. # 49, Exh. B.) Here, upon the Replacement Date, MetLife argues Plaintiff had not yet exhausted Standard's STD benefit payments and, thus, was not eligible to collect LTD benefits. (Dkt. # 52 at 7-8.) When Plaintiff left work on January 12, 2017 due to relapse, he had only used 34 of 180 days of STD benefits. (Dkt. # 49 at 2.) Since Plaintiff retained 146 days of STD benefits payable by Standard, MetLife insists Plaintiff was not yet entitled to LTD benefits under Standard's prior plan. (Dkts. ## 49, 52.) As a result, MetLife contends that Plaintiff does not satisfy the fifth condition. (Dkts. ## 49, 52.) Therefore, given that Plaintiff remained entitled to benefit payments by Standard and needed to exhaust 146 days of STD benefits before collecting LTD benefits, MetLife argues that Plaintiff does not satisfy the final two conditions of MetLife's Rules. (Id.)

Upon examination of both contracts in entirety, the Court finds MetLife is not responsible for covering Plaintiff's LTD benefits claim.  See Gilbert, 327 S.W.3d at 126.  Despite Plaintiff's change of insurance, Standard's foundational provisions propagate a baseline presumption that Standard remains responsible for Plaintiff's disability coverage following termination of the BD plan.  (Dkt. # 49, Exh. A.)  Standard's Insuring Clause explains that Standard will pay LTD benefits if the employee becomes disabled while insured under the employer's group policy.  (Id.)  It is stipulated that Plaintiff became disabled under Standard's coverage on November 9, 2016.  (Id. at 9.)  Standard's Benefits After Insurance Ends Or Is Changed provision affirms that Standard will cover an employee's LTD benefits even if the group policy is terminated following an employee's disability.  (Id. at Exh. A.)  Under these provisions, Standard is responsible to pay for Plaintiff's LTD benefits unless benefits become payable to Plaintiff under another disability insurance plan.  (Id.)  There is no evidence to suggest that benefits ever became payable under MetLife's certificate.

A coherent reading of both insurers' policies indicates Plaintiff's disability was uninterrupted from its onset on November 9, 2016 to its recurrence on January 12, 2017.  E.g., Bowerman v. Nat'l Life Ins.

13

Co., 654 F. App'x 550, 552 (3d Cir. 2016) (explaining that an insured's recurring disability may be treated as one uninterrupted disability period if recovery falls within a designated period); (Dkt. # 49 at 2.) Standard's Temporary Recovery provision explains, if an employee temporarily recovers under an STD claim, then suffers a recurrence of that disability within Standard's 90-day Allowable Period, the disability is considered uninterrupted. (Id. at Exh. A.) Since Plaintiff's Temporary Recovery fell within Standard's 90-day Allowable Period, his disability is considered continuous from onset to recurrence, though he temporarily resumed full-time work before recurrence.

Further, Plaintiff does not meet the fourth and fifth conditions of MetLife's Rules because Plaintiff was still owed benefits under Standard's terminated plan. (Id. at Exh. B.) Plaintiff needed to exhaust 180 days of STD benefits before asserting a viable claim for LTD benefits. (Dkt. # 49, Exh. A.) When Plaintiff's disability recurred, Plaintiff retained 146 days of STD benefits payable by Standard. (Id.) As a result, because MetLife's Rules are not satisfied, MetLife's Elimination Period is not waived. (Id. at Exh. B.) Because this Elimination Period must be satisfied before requesting LTD benefits, Plaintiff is not eligible to collect MetLife's LTD benefits. (Id.) MetLife, accordingly, owed no payable benefits to

Plaintiff when his disability relapsed. Since benefits are not payable to Plaintiff by MetLife's disability insurance plan under which Plaintiff became insured during his temporary recovery, benefits remain payable under Standard's terminated plan. (Id. at Exh. A.) Therefore, the italicized portion of Standard's Temporary Recovery does not apply. (Id.)

As such, MetLife is correct that Plaintiff did not exhaust Standard's STD benefits prior to becoming insured under MetLife's certificate and that Plaintiff's eligibility for those benefits is based on his disability date from November 2016. Thus, Plaintiff was not eligible to collect LTD benefits until he exhausted Standard's STD benefits on June 7, 2017. (Id. at 2.) Following exhaustion of these benefits, Plaintiff became eligible to collect LTD benefits from Standard, not MetLife, pursuant to Standard's Insuring Clause. (Id. at Exh. A.) Therefore, the Court finds MetLife not responsible for covering Plaintiff's claim for LTD benefits.

CONCLUSION

In accordance with the above, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** MetLife's motion for summary judgment on the issue of whether MetLife Certificate of Insurance provides coverage of Plaintiff's Long-Term Disability claim. As MetLife is the sole remaining defendant in this matter, the Court further instructs that Plaintiff's claims be

15

**DISMISSED WITH PREJUDICE**. This order constitutes **FINAL JUDGMENT** in the case and the clerk's office is **INSTRUCTED** to **CLOSE THE CASE.**

    **IT IS SO ORDERED.**

    **DATED:** Austin, Texas, June 25, 2020.

_____
David Alan Ezra
Senior United States District Judge