# United States Court of Appeals
**FIFTH CIRCUIT**
OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
Suite 115
**NEW ORLEANS, LA 70130**

July 21, 2021

Ms. Jeannette Clack
Western District of Texas, Austin
United States District Court
501 W. 5th Street
Austin, TX 78701-0000

    No. 20-50953   Talamantes v. Metro Life Ins
                         USDC No. 1:18-CV-904

Dear Ms. Clack,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

Enclosed for the district court and counsel is the approved bill of costs.

                                  Sincerely,

                                  LYLE W. CAYCE, Clerk

                                  By: _____
                                  Melissa V. Mattingly, Deputy Clerk
                                  504-310-7719

cc w/encl:
    Ms. Linda Gail Moore
    Mr. Lonnie Roach

# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
June 29, 2021
Lyle W. Cayce
Clerk

No. 20-50953

Enrique Talamantes,

*Plaintiff—Appellant*,

*versus*

Metropolitan Life Insurance Company,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:18-CV-904

Before Davis, Duncan, and Oldham, *Circuit Judges*.
W. Eugene Davis, *Circuit Judge*:

  Plaintiff filed this ERISA suit to recover long-term disability benefits from MetLife, which denied coverage. The district court severed the coverage issue from the remaining issues in this case. The decision on coverage narrowed to whether Standard Insurance Co., the carrier for calendar year 2016, or MetLife, the carrier for 2017, provided coverage. The district court granted summary judgment in favor of MetLife and entered a final judgment dismissing the case. The court concluded that Standard, which had been previously dismissed, covered this claim. We disagree. Our reading of the Standard and MetLife policies leads us to conclude that

No. 20-50953

Standard provided no coverage, and coverage was afforded to Plaintiff under MetLife's policy. We REVERSE and REMAND.

## I. BACKGROUND

Plaintiff, Enrique Talamantes, was a Product Development Engineer for Becton, Dickinson and Company ("BD"). BD provided its employees with a group life and health plan ("the Plan") which is governed by ERISA. The Plan provides long-term disability ("LTD") coverage to BD's eligible employees, including Plaintiff. During the relevant time period, BD used two insurers, Standard Insurance Co. ("Standard") for the 2016 calendar year and MetLife Insurance Co. ("MetLife") for the 2017 calendar year, to fund LTD payments under the Plan.

On November 9, 2016, Plaintiff became disabled due to trigeminal neuralgia[1] and underwent microvascular decompression surgery. In light of this disability, Plaintiff was approved for and paid short-term disability ("STD") benefits for 34 days under the Plan from November 18, 2016 through December 22, 2016. The Plan's STD benefits were paid by BD and administered by Sedgwick Claims Management Services ("Sedgwick") and did not involve Standard or MetLife. On December 23, 2016, Plaintiff returned to full-time active work. Standard's policy terminated on December 31, 2016, and MetLife's policy became effective on January 1, 2017. On January 12, 2017, Plaintiff stopped working and again became disabled because of a relapse in his trigeminal neuralgia symptoms.

After a minor dispute over reinstating the STD benefits, Sedgwick approved Plaintiff for the maximum amount of STD benefits (146 days) from January 12, 2017 through June 7, 2017. When added to the 34 days of STD

---

[1] Trigeminal neuralgia is a disease that affects trigeminal nerves in the face causing chronic pain.

2

benefits paid earlier, these benefits were paid by BD for a total of 180 days. After the STD benefits were exhausted, Sedgwick forwarded Plaintiff's claim for LTD benefits to Standard, the LTD benefits insurer for 2016—the year Plaintiff's disability began. Without addressing the merits of Plaintiff's disability, Standard denied Plaintiff's LTD claim on the basis that it was not covered under its policy.

Following denial, Plaintiff made a LTD benefits claim against MetLife in June 2018. MetLife was the LTD benefits insurer for calendar year 2017—the year Plaintiff's disability relapsed. After receiving no response, Plaintiff filed the instant lawsuit against the Plan, Standard, and MetLife on October 22, 2018, alleging that Plaintiff was entitled to recover LTD benefits under the civil enforcement provisions of ERISA.

On May 30, 2019, Plaintiff settled with Standard resulting in its dismissal. After resolving discovery issues related to the settlement, Plaintiff, MetLife, and the Plan stipulated to the dismissal of the Plan leaving Plaintiff and MetLife the only parties in this suit. Plaintiff and MetLife then jointly moved to bifurcate the trial on the issue of coverage and the merits of Plaintiff's disability claim under the policy. The district court granted the motion, and Plaintiff and MetLife jointly submitted a stipulation of the material facts relevant to the coverage issue. The parties filed cross motions for summary judgment asking the district court to decide whether MetLife provided coverage to Plaintiff under the terms of the policy.

The district court granted summary judgment in favor of MetLife concluding that "a harmonious reading of Standard's and MetLife's insurance policies shows that MetLife owes no payable benefits to Plaintiff." Plaintiff timely appealed.

## II. DISCUSSION

### A. Standard of Review

ERISA cases are governed by standard summary judgment rules.[2] Therefore, a district court's grant of summary judgment is reviewed de novo.[3] Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4]

Interpretations of policy provisions in ERISA-regulated plans are governed by federal common law.[5] "When construing ERISA plan provisions, courts are to give the language of an insurance contract its ordinary and generally accepted meaning if such a meaning exists."[6] "Only if the plan terms remain ambiguous after applying ordinary principles of contract interpretation are we compelled to apply the rule of *contra proferentum* and construe the terms strictly in favor of the insured."[7]

### B. Coverage Under the Policies

MetLife contends it does not cover Plaintiff's claim because the Standard policy provides the necessary coverage. The MetLife policy excludes payment of benefits if the claim is covered by another policy.[8] Both

---

[2] *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014).

[3] *Id.*

[4] *Id.* (quoting Fed. R. Civ. P. 56(a)).

[5] *Id.* at 331.

[6] *Id.* (quoting *Provident Life & Accident Ins. Co. v. Sharpless*, 364 F.3d 634, 641 (5th Cir. 2004)).

[7] *Id.* (quoting *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 818 (5th Cir. 1997)).

[8] "Any benefits paid for such Disability will be equal to those that would have been payable to You under the Prior Plan less any amount for which the prior carrier is liable."

policies cover Plaintiff under the general coverage provisions of the respective policies. Standard's policy states in its insuring clause, "If you become Disabled while insured under the Group Policy, we will pay LTD Benefits according to the terms of the Group Policy after we receive Proof of Loss." MetLife's policy describes when its insurance takes effect and provides coverage when an employee was covered under a prior plan: "If You are Actively at Work on the day before the Replacement Date, You will become insured for Disability Income Insurance under this certificate on the Replacement Date." The Replacement Date is January 1, 2017, and it is undisputed that Plaintiff was "Actively at Work" the day before the new policy attached. The parties agree that MetLife will not provide coverage for benefits due if coverage is provided by Standard's policy.

MetLife argues that two general provisions in Standard's policy continue to provide coverage for Plaintiff. The first is the insuring clause discussed previously. The second is the general rule for coverage after Standard's policy ends or is changed:

> During each period of continuous Disability, we will pay LTD Benefits according to the terms of the Group Policy in effect on the date you become Disabled. Your right to receive LTD Benefits will not be affected by . . .
>
> Termination of the Group Policy after you become Disabled.

Fortunately, the policies have more specific provisions that apply to the situation in this case—a transition from one policy to another during a period of temporary recovery.

Plaintiff relies on a specific provision in Standard's policy that excludes coverage when an employee experiences a temporary recovery. That specific provision describing the rules for a "Temporary Recovery" acknowledges:

> You may temporarily recover from your Disability and then become Disabled again from the same cause or causes without having to serve a new Benefit Waiting Period.[9] Temporary Recovery means you cease to be Disabled for no longer than the applicable Allowable Period.

It is undisputed that Plaintiff met the conditions described above to be temporarily recovered. The Standard policy next details the effects of a Temporary Recovery. Herein lies the exclusion:

> B. Effect of Temporary Recovery
>
> If your Temporary Recovery does not exceed the Allowable Periods [90 days], the following will apply.
>
> 1. The Predisability Earnings used to determine your LTD Benefit will not change.
>
> 2. The period of Temporary Recovery will not count toward your Benefit Waiting Period, your Maximum Benefit Period or your Own Occupation Period.
>
> 3. No LTD Benefits will be payable for the period of Temporary Recovery.
>
> ***4. No LTD Benefits will be payable after benefits become payable to you under any other disability insurance plan under which you become insured during your period of Temporary Recovery.***
>
> 5. Except as stated above, the provisions of the Group Policy will be applied as if there had been no interruption of your Disability.[10]

---

[9] A Benefit Waiting Period is "the period you must be continuously Disabled before LTD Benefits become payable." This period is defined as "Through the end date of any Employer-sponsored short term disability benefits or salary continuation program, or 180 days, if longer." During the Benefit Waiting Period, Standard does not pay LTD benefits.

[10] Emphasis to policy language added.

We agree with Plaintiff that paragraph four in Standard's policy under the "Effect of Temporary Recovery" clause primes the general insuring clauses relied on by MetLife and excludes coverage for LTD benefits under the precise circumstances of this case. Because Plaintiff became insured under MetLife's policy during his temporary recovery, the above exclusion in Standard's policy applies, and MetLife provides LTD benefits coverage. MetLife's provision specifically affording coverage when an employee is actively at work during the transition period fits the facts here perfectly and provides coverage to Plaintiff.

MetLife makes much of the fact that paragraph four says, "after benefits become *payable*" and argues that this is not the same as being merely eligible for coverage under a new policy.[11] This argument, however, overlooks the fact that whether the benefits are payable is dependent on the merits of Plaintiff's disability claim. To accept MetLife's argument that benefits were not payable under its policy would leave the claimant in the dark about whether he had coverage until he litigated his disability claim. The parties agreed to bifurcate the coverage and merits issues, and on remand, MetLife is free to litigate the disability issue and any other contested issues other than coverage.

Finally, MetLife's argument that Plaintiff's relapse in disability makes the disability "continuous" and triggers paragraph five of Standard's policy, captioned "Effect of Temporary Recovery," is similarly unavailing. Paragraph five contains an important qualifier: "***Except as stated above***, the provisions of the Group Policy will be applied as if there had been no interruption of your Disability."[12] In other words, when there is a temporary

---

[11] Emphasis added.

[12] Emphasis added.

recovery and allowable relapse, Standard considers no interruption (thus continuous disability) *except* when, under paragraph four, the employee becomes insured and benefits become payable under a new policy that affords coverage during the temporary recovery.

### C. The Waiting Period

Both policies provide for a waiting period during which an employee must be disabled before LTD benefits are triggered. The Standard policy required Plaintiff to be disabled for 180 days before becoming eligible for LTD benefits. In the event that MetLife provides a replacement policy, MetLife agrees to adopt the previous policy's waiting period and waive its own waiting period so long as five conditions are met.[13]

Plaintiff was paid STD benefits for 180 days. It is unclear to us what, if any, issue is presented as to whether Plaintiff met the waiting period under MetLife's waiting period waiver clause. Because this is a merits issue, we leave this determination to the district court to reconsider on remand.

### III. CONCLUSION

The Standard and MetLife policies outline how to transition coverage between old and new policies, as well as provide special rules for employees

---

[13] "Special Rules for Groups Previously Insured Under a Plan of Disability Income Insurance." "Rules for Temporary Recovery from a Disability under the Prior Plan." "We will waive the Elimination Period that would otherwise apply to a Disability under this certificate if You: 1. received benefits for a disability that began under the Prior Plan; 2. returned to work as an active Full-Time employee prior to the Replacement Date; 3. become Disabled, as defined in this certificate after the Replacement Date and within 90 days of Your return to work due to a sickness or accidental injury that is the same as or related to the Prior Plan's disability; 4. are no longer entitled to benefit payments for the Prior Plan's disability since You are no longer insured under such Plan; and 5. would have been entitled to benefit payments with no further elimination period under the Prior Plan, had it remained in force."

who temporarily recover during a transition. The plain language of the policies make it clear that Plaintiff's benefits coverage for his alleged long-term disability shifted from Standard to MetLife. Based on the foregoing we REVERSE and REMAND for further proceedings not inconsistent with this opinion.

Certified as a true copy and issued
as the mandate on Jul 21, 2021

Attest: *Lyle W. Cayce*
Clerk, U.S. Court of Appeals, Fifth Circuit

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 29, 2021

Lyle W. Cayce
Clerk

No. 20-50953

Enrique Talamantes,

*Plaintiff—Appellant*,

versus

Metropolitan Life Insurance Company,

*Defendant—Appellee.*

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:18-CV-904

_____

Before Davis, Duncan, and Oldham, *Circuit Judges*.

JUDGMENT

This cause was considered on the record on appeal and was argued by counsel.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is REVERSED, and the cause is REMANDED to the District Court for further proceedings in accordance with the opinion of this Court.

No. 20-50953

IT IS FURTHER ORDERED that Appellee pay to Appellant the costs on appeal to be taxed by the Clerk of this Court.

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

# BILL OF COSTS

NOTE: The Bill of Costs is due in this office *within 14 days from the date of the opinion*, See FED. R. APP. P. & 5TH CIR. R. 39. Untimely bills of costs must be accompanied by a separate motion to file out of time, which the court may deny.

Enrique Talamantes v. Metropolitan Life Insurance Company   No. 20-50953

The Clerk is requested to tax the following costs against: Metropolitan Life Insurance Company

| COSTS TAXABLE UNDER Fed. R. App. P. & 5th Cir. R. 39 | REQUESTED | | | | ALLOWED (If different from amount requested) | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Copies | Pages Per Copy | Cost per Page* | Total Cost | No. of Documents | Pages per Document | Cost per Page* | Total Cost |
| Docket Fee | | | | ~~505~~ | | | | 500.00 |
| Appendix or Record Excerpts | 4 | 61 | 0.15 | 36.6 | 4 | 61 | .15 | 36.60 |
| Appellant's Brief | 7 | 27 | 0.15 | 28.35 | 7 | 27 | .15 | 28.35 |
| Appellee's Brief | | | | | | | | |
| Appellant's Reply Brief | 7 | 14 | 0.15 | 14.7 | 7 | 14 | .15 | 14.70 |
| Other: Binding | 18 | 1 | 3.9 | ~~70.2~~ | 18 | | 1.50 | 27.00 |
| Tax | | | | | | | | 8.80 |
| | | | Total $ | ~~654.85~~ | | Costs are taxed in the amount of $ | | 615.45 |

Costs are hereby taxed in the amount of $ 615.45 this 21st day of July, 2021.

LYLE W. CAYCE, CLERK

State of / County of Texas, Travis County

By _____ Deputy Clerk

I Lonnie Roach, do hereby swear under penalty of perjury that the services for which fees have been charged were incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this Bill of Costs was this day mailed to opposing counsel, with postage fully prepaid thereon. This 9th day of July, 2021.

(Signature)

Attorney for Enrique Talamantes

*SEE REVERSE SIDE FOR RULES GOVERNING TAXATION OF COSTS

*FIFTH CIRCUIT RULE 39*

*39.1 Taxable Rates. The cost of reproducing necessary copies of the brief, appendices, or record excerpts shall be taxed at a rate not higher than $0.15 per page, including cover, index, and internal pages, for any for of reproduction costs. The cost of the binding required by 5ᵀᴴ CIR. R. 32.2.3that mandates that briefs must lie reasonably flat when open shall be a taxable cost but not limited to the foregoing rate. This rate is intended to approximate the current cost of the most economical acceptable method of reproduction generally available; and the clerk shall, at reasonable intervals, examine and review it to reflect current rates. Taxable costs will be authorized for up to 15 copies for a brief and 10 copies of an appendix or record excerpts, unless the clerk gives advance approval for additional copies.*

*39.2 Nonrecovery of Mailing and Commercial Delivery Service Costs. Mailing and commercial delivery fees incurred in transmitting briefs are not recoverable as taxable costs.*

*39.3 Time for Filing Bills of Costs. The clerk must receive bills of costs and any objections within the times set forth in FED. R. APP. P. 39(D). See 5ᵀᴴ CIR. R. 26.1.*

FED. R. APP. P. 39.    COSTS

(a) *Against Whom Assessed.* The following rules apply unless the law provides or the court orders otherwise;

(1) if an appeal is dismissed, costs are taxed against the appellant, unless the parties agree otherwise;

(2) if a judgment is affirmed, costs are taxed against the appellant;

(3) if a judgment is reversed, costs are taxed against the appellee;

(4) if a judgment is affirmed in part, reversed in part, modified, or vacated, costs are taxed only as the court orders.

(b) *Costs For and Against the United States.* Costs for or against the United States, its agency or officer will be assessed under Rule 39(a) only if authorized by law.

©) *Costs of Copies* Each court of appeals must, by local rule, fix the maximum rate for taxing the cost of producing necessary copies of a brief or appendix, or copies of records authorized by rule 30(f). The rate must not exceed that generally charged for such work in the area where the clerk's office is located and should encourage economical methods of copying.

(d) *Bill of costs: Objections; Insertion in Mandate.*

(1) A party who wants costs taxed must – within 14 days after entry of judgment – file with the circuit clerk, with proof of service, an itemized and verified bill of costs.

(2) Objections must be filed within 14 days after service of the bill of costs, unless the court extends the time.

(3) The clerk must prepare and certify an itemized statement of costs for insertion in the mandate, but issuance of the mandate must not be delayed for taxing costs. If the mandate issues before costs are finally determined, the district clerk must – upon the circuit clerk's request – add the statement of costs, or any amendment of it, to the mandate.

(e) *Costs of Appeal Taxable in the District Court.* The following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule:

(1) the preparation and transmission of the record;

(2) the reporter's transcript, if needed to determine the appeal;

(3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and

(4) the fee for filing the notice of appeal.

**FedEx Office**

FedEx Office is your destination
for printing and shipping.

```
              9222 Burnet Rd
              Austin, TX 78758
              Tel: (512) 339-1191

2/19/2021              1:35:23 PM CST
Team Member: Andrew P.
Customer: Jake Roach

                    SALE

210105123231        Qty 10      58.60

BW 1S Copy/Print    140 @     0.1400 T
 000001 Reg. Price    0.16
Col. CardStk Cvr     10 @     3.900
 000458 Reg. Price    3.90

    Price per piece   5.86
    Regular Total    61.40
    Discounts         2.80

210105124212        Qty 10      63.80

BW 1S Copy/Print     30 @     0.1600 T
 000001 Reg. Price    0.16
Re-Binding           10 @     1.0000 T
 002452 Reg. Price    1.00
De-Binding           10 @     1.0000 T
 000484 Reg. Price    1.00
Comb No Cover        10 @     3.5400 T
 000456 Reg. Price    3.54
BW 1S Resume Card    10 @     0.3600 T
 000005 Reg. Price    0.36

    Price per piece   6.38
    Regular Total    63.80
    Discounts         0.00


Priority Print      Qty 1       30.00

Priority Print $100+  1 @    30.0000 T
 051952 Reg. Price   30.00

    Price per piece  30.00
    Regular Total    30.00
    Discounts         0.00


Sub-Total                      152.40
Tax                             12.57
Deposit                          0.00
```

```
                               Total            164.97
*************** PURCHASE ****************
              APPROVED
Total:                         $164.97
Card Type:      UNKNOWN
Card Entry:     CHIP
Acct #:         ***********1041
Approval Code: 813632
************ EMV PURCHASE *************
App Label:              AMERICAN EXPRESS
Mode:                             Issuer
AID: A000000025010801
TVR: 0000008000
IAD: 064C0103A0B002
TSI: E800
ARC:
AC:  4B699762E0191D60
CVM: 5E0300

    Total Tender              164.97
    Change Due                  0.00


    Total Discounts     2.80
```



```
        *0196004881*


    Tell us how we're doing and receive
      $7 off your next $40 print order
   at fedex.com/welisten or 1-800-398-0242
   Offer Code:____ Offer expires 06/30/2021

    Get your message out in a big way with
     everything from full-color banners to
       photo-quality posters, yard signs,
           auto magnets and more.


             Thank you for visiting

                 FedEx Office
        Make It. Print It. Pack It. Ship It.
                fedex.com/office


      By submitting your project to FedEx
       Office or by making a purchase in a
       FedEx Office store, you agree to all
       FedEx Office terms and conditions,
       including limitations of liability.
        Request a copy of our terms and
      conditions from a Team Member or visit
             fedex.com/officeserviceterms
                   for details.

                  Customer Copy
```

# FedEx Office

FedEx Office is your destination
for printing and shipping.

9222 Burnet Rd
Austin, TX 78758
Tel: (512) 339-1191

12/31/2020                3:26:54 PM CST
Team Member: Scott G.
Customer: Jake Roach

SALE

| case 20-50953 | Qty 10 | 154.60 |
|---|---|---|
| BW 1S Copy/Print | 620 @ | 0 1300 T |
| 000001 Reg. Price | 0.16 | |
| Comb CardStk Cvr | 10 @ | 3.9000 T |
| 000458 Reg. Price | 3.90 | |
| BW on Tab Paper | 100 @ | 0.3500 T |
| 000072 Reg. Price | 0.35 | |
| Price per piece | 15.46 | |
| Regular Total | 173.20 | |
| Discounts | 18.60 | |

Sub-Total                         154.60
Tax                                12.75
Deposit                             0.00

Total                             167.35

*************** PURCHASE ***************
            APPROVED
Total:                           $167.35
Card Type:       UNKNOWN
Card Entry:      CHIP
Acct #:          ***********1041
Approval Code: 868774
************ EMV PURCHASE *************
App Label:              AMERICAN EXPRESS

```
Mode:                              Issuer:
AID: A0000000025010801
TVR: 0000008000
IAD: 064C0103A03002
TSI: E800
ARC:
     D5B28FB6AEEAF60F
CVM: 5E0300

.Total Tender           167.35
 Change Due               0.00


 Total Discounts    18.60
```



```
          *0196002810 1*


Tell us how we're doing and receive
    $7 off your next $40 print order
   at fedex.com/welisten or 1-800-398-0242
Offer Code:____ Offer expires 06/30/2021


Get your message out in a big way with
 everything from full-color banners to
  photo-quality posters, yard signs,
       auto magnets and more.



        Thank you for visiting

            FedEx Office
     Make It. Print It. Pack It. Ship It.
            fedex.com/office



   By submitting your project to FedEx
    Office or by making a purchase in a
    FedEx Office store, you agree to all
    FedEx Office terms and conditions,
     including limitations of liability.
      Request a copy of our terms and
   conditions from a Team Member or visit
         fedex.com/officeserviceterms
                for details.

              Customer Copy
```

**Paul Cash**

| | |
|---|---|
| From: | TXW_USDC_Notice@txwd.uscourts.gov |
| Sent: | Tuesday, November 17, 2020 2:53 PM |
| To: | cmecf_notices@txwd.uscourts.gov |
| Subject: | Activity in Case 1:18-cv-00904-DAE Talamantes v. The Metropolitan Life Insurance Company |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

Case: 20-50953     Document: 00515945465     Page: 7     Date Filed: 07/21/2021

U.S. District Court [LIVE]

Western District of Texas

## Notice of Electronic Filing

The following transaction was entered on 11/17/2020 at 2:52 PM CST and filed on 11/17/2020
**Case Name:**     Talamantes v. The Metropolitan Life Insurance Company
**Case Number:**   1:18-cv-00904-DAE
**Filer:**         Enrique Talamantes
**WARNING: CASE CLOSED on 06/25/2020**
**Document Number:** No document attached

**Docket Text:**
**NOTICE OF APPEAL following [63] Notice of Appeal (E-Filed) by Enrique Talamantes. Filing fee $ 505, receipt number 0542-14190056. Per 5th Circuit rules, the appellant has 14 days, from the filing of the Notice of Appeal, to order the transcript. To order a transcript, the appellant should fill out a (Transcript Order) and follow the instructions set out on the form. This form is available in the Clerk's Office or by clicking the hyperlink above. (jv2)**

**1:18-cv-00904-DAE Notice has been electronically mailed to:**

Linda G. Moore     lmoore@estesthornecarr.com, ahoward@estesthornecarr.com, tgoodson@estesthornecarr.com

Lonnie Roach     lonnie@brrlaw.com, dora@brrlaw.com, paul@brrlaw.com

**1:18-cv-00904-DAE Notice has been delivered by other means to:**